### PROCTOR *v.* GREEN.

The word "may," as used in G. L., *c.* 136, *s.* 9, which provides that on a petition for an account against a mortgagee, an issue of fact "may be determined by a jury," is to be taken in a permissive and not in a mandatory sense.

Whether a mortgagee in possession, holding two mortgages on the same land, the first one of which only is recorded, may be allowed to apply the rents and profits, in the absence of any special application by the parties, on the debt secured by the second mortgage, as against a purchaser of the debtor's equity of redemption at an execution sale,

depends on the question of fact whether the purchaser knew of the existence of the second mortgage previous to his attachment and levy. A tender by a debtor, covering the amount of the sale and costs, to the purchaser at an execution sale of the debtor's equity of redemption of mortgaged land, not made till after the levy of a second execution on the debtor's equity of redeeming the land from the first sale, does not divest the purchaser at the second sale of his rights in the land.    And it makes no difference in this respect that the same person is the plaintiff in both executions.

PETITION, under G. L., *c.* 136, *s.* 9, filed May 12, 1879.    Facts found by the court.    January 20, 1877, David S. Green and wife made a mortgage of the land to Rogers to secure a note of that date for $750, payable $200 in two years and $550 in three years from date.    The note and mortgage were by Rogers assigned to the defendant about May 15, 1878, and he has since been the owner and holder of them.    June 29, 1878, the plaintiff attached the interest of David S. Green in the mortgaged premises, and obtained judgment.    His right to redeem the land from the mortgage was sold January 11, 1879, to the plaintiff for $100, and a deed was made to her by the deputy sheriff who had the execution, and the execution was returned satisfied in part.    An alias execution was issued April 1, 1879, and upon it the right of the mortgageor to redeem from the previous sale was sold to the plaintiff, May 10, 1879, and a deed of this right given to her by the officer who had the execution.    March 14, 1879, the plaintiff demanded, in writing, of the defendant an account of the amount due on the Rogers mortgage.    March 18, 1879, the defendant returned the following answer in writing: " The amount due me upon the mortgages of David S. Green is sixteen hundred and forty dollars seventy-five cents.

DAVID L. GREEN."

May 9, 1879, the mortgageor, David S. Green, tendered to the plaintiff the amount for which the right in equity was sold on the first execution, and the costs of that sale.

April 10, 1877, David S. Green, who is son of the defendant, made to the defendant a mortgage of the premises described in the Rogers mortgage, and subject to it, to secure his note of $700. This mortgage was never recorded.    March 8, 1879, the defendant entered upon and took peaceable possession of the mortgaged premises, and in August and September, 1879, published a notice three weeks successively in a newspaper printed at Concord, to the effect that his entry was for the purpose of foreclosing both mortgages.

The plaintiff claims that the second mortgage cannot be set up in this proceeding; that if any question can be made upon the second mortgage, it is invalid as against her right, because she had

no notice of it, and for other reasons, and the defendant can apply no part of the rents and profits he has received to that mortgage. The defendant claims that the second mortgage is valid against the plaintiff's right, and that she had full knowledge of it before her attachment was made, and that he has the right, under this proceeding, to apply the rents and profits upon that mortgage. He claims the right to try the validity of the second mortgage by jury, under G. L., *c.* 136, *s.* 11.

*Norris & Albin*, for the plaintiff.

*Mugridge* (with whom was *Whittemore*), for the defendant.

FOSTER, J. Upon the facts stated in the case, we see no ground for the suggestion that the defendant has waived the right of a jury trial provided by G. L., *c.* 136, *s.* 11. The issue of fact seems to have arisen at that period in the proceedings when, the defendant having set up his second mortgage, the plaintiff insisted that she had no previous notice of it; to which the defendant replied, that she had full knowledge of it before her attachment was made. It would seem, from the statement of the case, that he made his election of a jury trial at the earliest opportunity. The proceeding to a hearing in the first instance before the court was no waiver of a right, which did not accrue until upon the hearing an issue of fact arose. The statute says, "such issue, if either party elects, *may* be determined by a jury."

This petition is an equitable proceeding, and is governed by the rules and practice of equitable procedure. G. L., *c.* 209, *s.* 1. Having no constitutional right of trial by jury *(Bellows* v. *Bellows,* 58 N. H. 60), the word "may," in *s.* 11, *c.* 136, is to be regarded as used in a permissive and not in a mandatory sense. "The ordinary meaning of the word, which is permissive, ought to be adopted, and must be presumed to be intended, unless it would manifestly defeat the object of the provision." Pott. Dwarris 220, *n.* 27.

It was undoubtedly the right of the petitioner to maintain her petition to redeem the first mortgage only *(Milliken* v. *Bailey,* 61 Me. 316) ; but it was also the right of the defendant to resist in a legal manner the application of the rents and profits to the amount due upon that mortgage. If it was his legal right to have such application made to a second mortgage, then he had the right to set up that mortgage and insist upon its validity, and the issue thus raised was certainly a material fact.

Upon the determination of this issue depended the defendant's claim to make application of the rents and profits to the second mortgage. If the plaintiff had no knowledge of the existence of this mortgage, her attachment had precedence of it; otherwise, not. It would be unjust to require an application of the rents and profits to be made in reduction of the amount due upon the first

mortgage, if, at the time of her attachment, the plaintiff had notice of the second. If the doctrine of the application of payments applies, we apprehend the mortgagee may make that application, the mortgageor not having done so. If the law, instead of the parties, is to make the application, the principles of equity are to be recognized (*Thompson* v. *Phelan*, 22 N. H. 339); and, with such recognition, the equitable application, as already suggested, would depend upon the determination of the question of fact which arose upon the hearing of the petition.

The plaintiff by her levy of her second execution upon the right of the mortgageor to redeem his equity from the sale of January 11, 1879, could not defeat the mortgageor's right of redemption from that sale. The right did not expire until January 11, 1880, and it was perfected May 9, 1879. But the tender by the mortgageor to the plaintiff of the amount for which the right in equity was sold on the first execution cannot avail to preclude the plaintiff from maintaining her petition. She relies upon the alleged invalidity of the second mortgage. If she had no notice of it, it is, as to her, of no effect, being unrecorded. The validity or invalidity of this mortgage presents an issue of fact which the defendant has the right to have determined, in some way, in this proceeding.

Assuming the second mortgage to be invalid as against the plaintiff, she acquired, by her attachment, levy, and purchase at the sheriff's sale upon her first execution, the mortgageor's right of redemption from the first mortgage, subject to his right of redemption from the sheriff's sale to herself. If the mortgageor's tender discharged the plaintiff's first levy, it did not impair her rights secured by her second levy. Suppose A sues C for $500, gets execution, and levies on C's right to redeem mortgaged land,—this right being worth $1,000: afterwards B sues C, gets an execution, and levies on C's right to redeem from A's levy,—this right being worth $500. If, before B's levy, C had tendered to A the $500 to redeem the land from A's levy, C would probably have owned the right to redeem the land from the mortgage, the same as before. But if C does not make his tender to A until after B's levy, although A's levy might thus be discharged, still no reason occurs to us why the right which B secured by his levy, which was a valuable right, would not be preserved. What was that right? It was the right, as against the mortgageor, of redeeming the land from A's levy, that is, the right to hold the debtor's equity of redemption from the mortgage after paying A $500. But A having rightfully received his $500 from C, B of course cannot pay it to A, but he still holds, at least, what he acquired by his levy,—the equity of redemption from the mortgage, less the $500 secured by A's levy. Whether in such a case the $500 should be deducted, or whether it should enure to the benefit of the second creditor, it is not necessary to inquire. But it can make no difference that

the same person is the plaintiff in both executions. In this case, the plaintiff, by the levy of her second execution, secured a right, as against the mortgageor, in his equity of redemption from the first mortgage, which entitles her to an account from the mortgagee to enable her to redeem the land. *Russell* v. *Fabyan*, 34 N. H. 218.

The case may be remanded to the trial term, where the presiding judge will determine whether or not the validity of the second mortgage shall be submitted to a jury, upon issues framed for that purpose.

*Case discharged.*

ALLEN, J., did not sit: the others concurred.